# INITIAL DISCOVERY PROTOCOLS FOR FIRST-PARTY INSURANCE PROPERTY DAMAGE CASES ARISING FROM DISASTERS

## PART 1: INTRODUCTION AND DEFINITIONS.

(1) Statement of purpose.

  a. These Disaster Litigation Initial Discovery Protocols ("Disaster Protocols") apply to cases involving first-party insurance property damage claims arising from man-made or natural disasters ("Disaster Cases"). The Disaster Protocols are designed to be implemented by trial judges, lawyers, and litigants in state and federal courts. The Disaster Protocols make it easier and faster for the parties and their counsel to: (1) exchange important information and documents early in the case; (2) frame the issues to be resolved; (3) value the claims for possible early resolution; and (4) plan for more efficient and targeted subsequent formal discovery, if needed.

  b. Participating courts may implement the Disaster Protocols by local rule or by standing, general, or individual-case orders. Although the Disaster Protocols are designed for the full range of case size and complexity, if any party believes that there is good cause why a case should be exempted, in whole or in part, from the Disaster Protocols, that party may raise the issue with the court.

  c. The Federal Rules of Civil Procedure ("FRCP") referred to in the Disaster Protocols apply to Disaster Cases in federal court. The state-law counterparts to the FRCP referred to in the Disaster Protocols apply to cases in state court, unless the court orders otherwise.

  d. The Disaster Protocols are intended to supersede the parties' obligations to make initial disclosures under FRCP 26(a)(1), or under the applicable state disclosure rules, for Disaster Cases. The Disaster Protocols are not intended to preclude or modify any party's rights to formal discovery as provided by those rules, other applicable local federal rules, or state rules. Responses to the Disaster Protocols do not waive or foreclose a party's right to seek additional discovery under the applicable rules.

  e. The Disaster Protocols were prepared by a balanced group of highly experienced attorneys from across the country with expertise in Disaster Cases. The Disaster Protocols require parties to exchange information and documents routinely requested in every Disaster Case ("Initial Discovery"). This Initial Discovery is unlike initial disclosures under FRCP 26(a)(1) because it includes favorable as well as unfavorable information and documents, is limited to information and documents that are not subject to objection, and is limited to the information and documents most likely to be important and useful in facilitating early settlement discussion and resolving or narrowing the issues requiring further litigation.

(2) Definitions. The following definitions apply to cases under the Disaster Protocols.

a. ***Claimed Loss.*** "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer in the litigation.

b. ***Document.*** "Document" and "documents" are defined to be synonymous in meaning and equal in scope to the phrase "documents or electronically stored information" in FRCP 34(a)(1)(A). A draft of a document or a nonidentical copy is a separate document.

c. ***Event.*** "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

d. ***Identify (Documents).*** When referring to documents, to "identify" means to describe, to the extent known: (i) the type of document; (ii) the general subject matter; (iii) the date; (iv) the author(s), according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was to have been sent. Alternatively, to "identify" a document means to produce a copy.

e. ***Identify (Natural Persons).*** When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) email address; (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent requests to identify that person.

f. ***Identify (Non-Natural Persons or Entities).*** When referring to a corporate entity, partnership, or other unincorporated association, to "identify" means to give the: (i) corporate or entity name and, if known, the trade or other names under which it has done business during the relevant time period; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number; and (v) internet address. Once a corporate or other business entity has been identified in accordance with this subparagraph, only the name of that entity needs to be listed in response to subsequent requests to identify that entity.

g. ***Insurer.*** "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

h. ***Insured.*** "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation, or asserting a claim under an assignment.

i. ***Loss.*** "Loss" means damage to the Property caused by the Event.

5

  j. ***NFIP Claim.*** "NFIP Claim" means a claim the Insured asserts in the litigation for coverage under a National Flood Insurance Program insurance policy.

  k. ***Other Insurance.*** "Other Insurance" means any insurance policy, other than the Policy in force on the date of the Event, that covers or potentially covers the Property or the Claimed Loss.

  l. ***Policy.*** "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

  m. ***Property.*** "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

  n. ***Relating to.*** "Relating to" means concerning, referring, describing, evidencing, or constituting.

(3) Instructions.

  a. The relevant time period for this Initial Discovery begins on the date immediately before the Event and ends on the date the lawsuit is filed for the Claimed Loss, unless a different time period is indicated with respect to a specific production obligation as set out in Part 2 or Part 3 below.

  b. This Initial Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection, including a joint defense agreement. Documents withheld based on a privilege or work-product protection claim are subject to FRCP 26(b)(5) or applicable state rules. A detailed privilege log is not required. Instead, documents withheld as privileged or work-product protected communications may be described briefly by category or type. Withholding documents on this basis does not alleviate any obligation to produce the withheld documents or additional information about them at a later date, if the court orders or the applicable rules require.

  c. If a partial or incomplete or "unknown at this time" answer or production is given to any disclosure requirement in these Disaster Protocols, the responding party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

  d. For this Initial Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available. This Initial Discovery is subject to FRCP 26(e) on supplementation, to FRCP 26(g) on certification of responses, and to similar applicable state rules. This

6

Initial Discovery does not preclude either party from seeking additional discovery under the rules at a later date.

e. This Initial Discovery is subject to FRCP 34(b)(2)(E) or applicable state rules on the form of production.

f. This Initial Discovery is subject to the attached Interim Protective Order unless the parties agree or the court orders otherwise. The Interim Protective Order will remain in place until and unless the parties agree on, or the court orders, a different protective order. Absent party agreement or court order, the Interim Protective Order does not apply to subsequent discovery.

g. Within 14 days after the entry of this Order, the Parties will meet and confer on the format (e.g., TIFF/text, searchable pdf, or Excel) for the production of documents under these Disaster Protocols. This will not delay the timeframes for Initial Discovery, absent court order. Nor will production in one format preclude requesting production in another format, if applicable rules of discovery allow.

## PART 2: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURED.

(1) Timing.

The Insured's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion, unless the court orders otherwise.

(2) Information to be produced by the Insured:

a. A description of the Insured's ownership or other interest in the Property.

b. The address of the Property (or location of movable Property) on the date of the Event.

c. The name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefitting the Insured or the Property on the date of the loss, including relevant policy and claim numbers for any claims.

d. Identify any current mortgagee or other known lien holder.

e. A computation of each item or type of Claimed Loss, including content claims if in dispute. When the Policy requires, the computation should reasonably identify or itemize price and quantity of materials.

f. Identify any payments received under the Policy relating to the Event.

7

g. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

h. Identify any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss.

i. Identify the public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed Loss.

j. With respect to any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims made for coverage by the Insured on the same Property at issue in this litigation.

k. A general description, including the court and docket number, of any other lawsuits arising from the Event relating to the Property.

l. A general description of any known preexisting damage to the Property relating to the Claimed Loss.

m. A general description of any claims for property damage or lawsuits resulting from property damage in the past ten years relating to the Property.

n. Identify any sale, transfer, or foreclosure of the Property after the Event.

(3) Documents to be produced by the Insured:

a. Documents relating to the Claimed Loss, including: loss estimates; adjuster's reports; engineering reports; contractor's reports; estimates, bids, plans, or specifications regarding repair work (whether planned, in progress, or completed); photographs; videos; or other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss.

b. Proofs of loss for the Claimed Loss.

c. Documents relied on by the Insured in generating any proof of loss required or provided under the Policy.

d. Written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim.

8

    e. Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Loss.

    f. Written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event.

    g. The insurance policy with respect to any Other Insurance, and the claim numbers for claims made to recover Loss to the Property relating to the Event.

    h. Appraisals or surveys of the Property condition within five years before, or any time after, the Event.

    i. If there has been an appraisal under the Policy, documents relating to the appraisal process.

    j. **For NFIP Claims**, communications to and from FEMA, the Insurer, and the Insured relating to the Claimed Loss or the Property before the litigation was filed.

    k. **For NFIP Claims**, documents relating to an administrative appeal under 44 C.F.R. § 62.20.

    l. Any other document(s) on which the Insured relies to support the Claimed Loss.

## PART 3: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURER.

(1) Timing.

The Insurer's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion, unless the court rules otherwise.

(2) Information to be produced by the Insurer:

    a. **If there is a dispute over coverage,** in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including:
        i. Any exclusions or exceptions, or other coverage or legal defenses;
        ii. The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;
        iii. Whether there is also a dispute as to the value or amount of the Claimed Loss;
        iv. Any other basis on which coverage was denied.

    b. **If there is a dispute over all or part of the valuation,** an explanation of the Insurer's basis for disputing the value or amount of the Claimed Loss, including:

9

        i. The Insurer's understanding of the nature of the dispute;

       ii. The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and

      iii. The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.

  c. Any Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.

  d. Any payments previously made under the Policy relating to the Event.

  e. A general description of any other basis for nonpayment of the Claimed Loss, in whole or in part.

  f. Any other Event-related lawsuits filed for the Property or the Insured.

  g. Identify the adjuster(s) who handled the claim.

  h. Identify the individual(s) who recommended, made, approved, or rejected the claim decision.

  i. Identify the estimators, inspectors, contractors, engineers, or other persons who participated in the claims process or on whom the Insurer relied in making its claim decision.

  j. If preexisting damage is at issue in the litigation, a general description of any prior claims in the past ten years for the Property.

(3) Documents to be produced by the Insurer:

  a. The claim file maintained by the Insurer.

  b. The complete Policy in effect at the time of the Event.

  c. Assessments of the Claimed Loss, including: loss reports, expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy, damage assessments, adjuster's reports, engineering reports, contractor's reports, and estimates of repair or replacement.

  d. Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

  e. Any other evaluations of the Claimed Loss.

f.  Documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

g.  Any claim log, journal, or diary maintained by the Insurer relating to the Claimed Loss.

h.  The complete underwriting file maintained by the Insurer relating to the Property, its condition, or coverage.

i.  Proofs of loss for the Claimed Loss.

j.  If there has been an appraisal under the Policy documents relating to the appraisal process.

k.  **For non-NFIP Claims**, written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

l.  **For NFIP Write Your Own Claims**, communications to and from FEMA, the Insurer, and the Insured relating to the Claimed Loss or the Property before the litigation was filed.

m.  **For NFIP Direct Claims**, written communications exchanged between the Insured and FEMA claims-handling personnel referring to the Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

n.  **For all NFIP Claims**, documents relating to the administrative appeal under 44 C.F.R. § 62.20.

o.  Any other document(s) on which the Insurer relies to support its defenses.